A.G. Minor v. Chester Upland School District Mr. Islam and Mr. Kennedy, you both know how to draw a crowd, don't you? We're interested. We're not leaving. Okay, Mr. Islam. You have reserved time for rebuttal. Yes, Your Honor. Good morning. My name is Mokum Islam. I'm counsel for the appellant, Alfonso Green, a minor, in this matter. I will reserve three minutes for rebuttal, please. May it please the court. Your Honor, generally speaking, this is a brief history of the background of the case of the facts. Alfonso Green was attending Chester High School, in which Chester High School is operated by Chester Upland School District. In the 2012-2013 school year, the Chester Upland School District made a decision to stop issuing student identification cards to Chester High School. This is important for three purposes. Number one, this was a decision that changed prior actions. In the past, they did have identification cards. This year, they did not. Do you know about that policy, why the policy was instituted in the first instance? Which policy, to stop issuing identification cards? No, the policy to require students or to issue student IDs. I don't, Your Honor. What the rationale for it was, whether it was successful, and the reason it was discontinued. Do you know? Does the record reflect any of that? Well, Your Honor, that's one of the issues we have in this case. This case was dismissing the complaint status on 12B6. Unfortunately, there was no discovery in the matter. So I do not have the rationale for the school district and why they had a previous policy or why they changed the policy. However, what I do know is that there is a school visitor policy, which specifically states that it's applicable to people who are not members of the student body. Well, there's no way to determine who's a member of the student body unless you have identification, at least in glance and walking through the hallways. So I do not know, because again, discovery was not allowed in this case. It was dismissed on the complaint level, which is one of the arguments we have in this matter. However, what I do know is that there was other policies referred to, referencing people who are student members, and identification card would be critical to that issue. Mr. Islam, are we focused today just on the state-created danger question, or you had argued below that you could develop facts and discoveries to support a special relationship. Is that also a basis for your seeking amendment, or is that off the table today? Technically, it's off the table. I did not preserve my appeal. However, I do understand the Third Circuit, throughout the country, their special relationship is murky. The Third Circuit has been clear, though, that on students, unfortunately, there's not a special relationship. And it's been kind of clear. I know Judge Fuentes wrote a significant dissenting opinion of the Belaski. However, it was our opinion the best case would be to go move forward to state-created danger based upon the Third Circuit's precedent. I do, however, we did argue that special relationship in our complaint. I do believe that if we were permitted to go through with discovery, it would be arguably an opportunity to flush that discovery out and determine if it was a special relationship, which would be some of the issues that Judge Fuentes has argued. And even this Third Circuit has recognized in other states, such as compulsory laws, whether the student was required to attend school and things of that nature. Unfortunately, in the complaint status, it was dismissed. And we, at this point, are focused on the state-created danger solely. How does the existence of a policy of checking visitors or requiring their registration and a decision not to enforce that policy, how does that give rise to an affirmative act when we seem to have rejected repeatedly, including in Morrow and Morse, the idea that the existence of a policy and violations of it was sufficient to get over that requirement? And this case is totally not analogous to Morrow at all. Morrow, in significant case law of the like, is regarding violence between two students within the same school. You have students within the school who are violated or attacked, and someone does not conform with the policy. I agree with you that this Third Circuit is very clear on that point. This case is not like that. This case is similar to Morse. And therefore, the biggest argument or attack on our claim would be at most foreseeable harm or foreseeable plaintiff. Because in Morse, they did find that there was an actual act of unlocking the door and keeping the door open. The difference was the foreseeability test. However, in this aspect, in this case, I think foreseeability is more clearly direct, considering that the students were not able to check in or have any identification card. But the foreseeability has to be of the specific harm anticipated. That's what we held in Morse. Correct. So here, how can you satisfy that test here when this was an intentional and violent act by a trespasser? Because in the Chester High School, in the Chester area, there was significant information, at least for the school code or the school reporting of previous instances of trespasses in the school. Committing violent acts? Committing violent acts, yes. There was already this information. Why isn't that pleaded in the complaint? I did plead in the complaint. However, again, through discovery, we mentioned that there was a higher incidence of trespassers known within the building. I think that's a quote. But the foreseeability is not pled as such in the complaint, is it? The foreseeability states it says the school district was aware of higher incidence of trespassers who entered Chester High School without identification cards. So you're now saying that those prior trespassers had engaged in violence within the school. Again, this was information that was provided subsequent to the complaint. Again, we weren't able to do any discovery. For example, the school has to, we did a right-to-know request, and based upon the timing, we weren't receiving information in adequate time. Eventually, we did find out that in these instances, they list how many instances of violence, how many instances are not violent, and so forth and so on. So we have that information now. But my point is that as far as foreseeability and fairly direct, if you look at the case law in Morris, it's a little different to this case for foreseeability and direct, mainly because the instance of the individual who did the action was, it was a mentally disabled person who merely came into the building and attacked the school teacher. And to be clear, there was no history or prevalence of anything that this person, the door was only open for the contractors. In our case, it's a difference. And here's the difference. The difference is that this student who came, or person of young age or minor who came into the building, was someone who could have subsequently entered the building because of the lack of identification card. Maybe you're getting into it. But could you connect foreseeability with the school's decision not to continue its student ID policy? Yes. And to be clear, first, in regard to foreseeable, I would like to also state a couple of things to be clear. The state – Well, the essence of your case is that they discontinued the student ID policy, and that resulted in – In the form of that, correct. Well, that resulted in the harm to your client. Yes, Your Honor. And that they had to know that as a matter of ceasing that policy, this is something that would follow on. Correct. And to be clear, before I answer that question, I would like to state, number one, the district judge did not even address any of the other problems that were tested. I know the circus would have the ability to do that. They just addressed the Affirmative Act. The Affirmative Act, the fourth problem. So although I'm fully prepared to address that, I would like to say they didn't address that issue, and either the other issue we have is they didn't even provide the complaint of an opportunity to curate an amendment or curate a complaint with any issue. What is it about that policy that made this act foreseeable, resulting in harm to your client? Because if you're in a high-crime area and you have students who are coming into the building, in and out, young people of young age, and there's no way – and you have a policy specifically – and if you read the school visitor policy, for example, it specifically deals with adults and people – it mentions adults, but then it says non-member student body. So if you have no policy on that issue and you have a high-crime area and you have instances of trespassers already in your building in previous instances, then there is foreseeability that if that trespasser enters that building, there can be some harm caused to them. How do you get – you're not relating the policy to the harm and to foreseeability. Well, what I'm trying to relate, Judge Wendt, is what your opinion is that the issue here is not necessarily the policy, it was the action, the action of stopping the identification cards.  So we're not saying to say that they create the harm, but they increase the danger, because if you have more trespassers – How do you – I mean, anybody could have walked into the school, you know, and not every school has a student ID policy. They could just walk in the school and commit an act such as occurred in this case. And I would agree with you, but when you have an act that previously you had identification cards – But how do you know that that was working? Well, that's again, Your Honor, we are in the complaint stage. You're not required to prove that prior to the performance of evidence. All we have to raise is more than a speculation level. And what I'm simply saying is that if you have instances of higher crime or higher trespassers in the building, you have a minor that's in the building who is of school age 16 to 17, age varying, and you don't have any policy or any identification card for them to use to determine who's in the building, who's not in the building, that increases their harm. It's not about at this level – It sounds like your argument is that every school in a high crime district should have a student ID policy. No, I'm not, Your Honor. What I am saying is that when you change that policy, you then create a set of things in motion where you increase the harm to someone. If there was another issue where the response to what you said, Your Honor, if there's an issue where a school never has that policy, then you get back to the other decisions of Morrill and et cetera where you're talking about failure to act. And I would agree with you that that's a failure to act. You never had a policy. You should have had said policy or negligence standard, which is not applicable in the 1983 action. What I'm alleging is that they had this policy. It was a policy enforced. Then they changed it. So when you change that, you increase the harm. But increasing the harm is in the past. It's really that by this affirmative act they have created the danger. I would say they increased the harm merely because there was some evidence of trespassers in the past. So there's some instances of trespassers. So there is this harm that's available, and they know that. But when you increase it by having the – removing the identification cards, now that harm that was already prevailing is increased. And just to be clear, in the circuit alone, in the Eastern District specifically, this issue has been just four months, for example, prior to this case. L.R. of the School District of Philadelphia was issued by Judge Dubois. And in that case, it was very interesting because it was a very similar set of facts in that an intruder came into the school and assaulted a student. However, the only difference in that case was that this intruder came into the school under the pretense of being And then the school did not have that person check the identification card, did not have that person provide identification or anything of that nature. And when the student left with the person, they then went home and they sexually assaulted this person. Now, my only point to you – my only point in this reference in that case is to say that it's no way in the – does the school district argue the same argument in that case? It's no way for them to argue foreseeability of that harm because how would you know the person is a predator? There was no way for them to argue that this was a specific, what do you call it, foreseeability that this was going to happen. However – If there's a school, let's say, a mile down the street from Chester, the very same incident happens, but that other school has no student ID policy. Somebody walks into the school and commits a random act of violence. Chester would be liable because it had a policy and discontinued it. The other school, because it never had a policy, would have no liability whatsoever. I mean, that doesn't make sense to me. Maybe you can make sense for me. No, reading your dissent, I would agree with you in your position in that. And I don't agree to that as well, but I think the Third Circuit would say yes. I think the Third Circuit would say yes, that that does. But I've read your dissent and you disagree with some aspects of the Third Circuit with the Affirmative Act. But my point is just saying that – It has to do with foreseeability of harm. Margo, we rejected exactly this idea that putting in place some protective action, like suspending the bully consistent with the school policy, and then exercising discretion to remove the protection, that that did not constitute an Affirmative Act. And the harm that followed, even though in that case with the protective order and with the victim having specifically been targeted, was far more foreseeable. We rejected the idea there of liability. Well, I disagree with that in some aspects, Judge Carlson, to this extent. The issue of moral was not that they removed the protection, because the argument for exactly the Third Circuit particularly explicitly said it actually was a temporary protection because they did temporarily protect them. And the act, they allege, was expelling the student, which they said that couldn't have been the act because they did that. They actually did something that temporarily protected them. So the issue of moral was more so along the strong lineage of case law in the Third Circuit where two students within the same school, the school district or state actor does not have to intervene. And the school has said in those cases, we're not going to institute that. And that's what Judge Flint has mentioned earlier with the school down the street. So if I could finish, my point is in this case it's only different and it will be more applicable to Morris. It will be also more applicable to L.R. as a case like I just mentioned in Eastern District. Because here what you're having is that the school has a policy. And when they removed that policy or removed this, they made an action. And this action then caused harm. And the last case I'll point to, which is also very much analogous to this, is Riker v. Pathways. It's another Eastern District case. And in the Eastern District case of Riker v. Pathways,  however, the parent alleged that by placing the student there, the school failed. They alleged two affirmative acts. They said, number one, they failed to inform the Pathways about certain tendencies in the student, which caused the student harm in the school. The Third Circuit dismissed that and said that's a failure to warn. That's not an affirmative act. However, what was pointed about this case, which is relevant to our case here, is that the school district had in its school a one-on-one or paraprofessionals with the student all the time. When they went to Pathways, they removed the paraprofessional. So a paraprofessional was there. Now, although the Third Circuit did not say that this caused the harm because it was a different ultimate harm that it reached, the issue in that they said it was an act. So it's the same scenario. What I'm arguing is that there was this in place, this policy, the student identification cards. Through the decision of the school district, the school district removed that, which thereby caused the harm. And to conclude, I'll also say that, like, again, Do you know if the policy of issuing student IDs prevented harm? Again, Your Honor, unfortunately, Judge Quinonez dismissed it on a complaint status, so we didn't have any opportunity to do any discovery. We had no opportunity to do any depositions or any type of impact. And my concern is that Yes, this is a decision on the face of your complaint. If you were allowed to go back and amend your complaint, what would you add? Well, for example, I would add some of the information I just addressed here before this Court that we found not subsequent to the dismissal, which is, number one, that we have the student policy. We have the instance of trespassers and what violent occurrences they had within the building. That's something that we can add. We can also add the fact that, at least from my understanding of the affirmative action, that this decision, it seems to me, again, when you read Judge Quinonez's opinion, it was merely focused on the wording. So it was her position that not issuing identification cards was a failure to act. So we can characterize that or describe it in a better aspect of describing that this was not a failure to act, but how this was actually an affirmative decision that they did. We have to hear from Mr. Rizlan. We have to hear from Mr. Kennedy. Okay. You've got some minutes left on the problem. Yes, thank you. Yes, sir. Thank you. Members of the panel, thank you for allowing me to speak on behalf of Chester Upland School District today. Based on the tenor of your questions, it sounds like foreseeability is at the forefront of your minds. And the one thing I would like to address that hasn't been addressed at all is that there's two components to foreseeability. There's foreseeability and there's something called fairly direct. And there's been a lot of discussion about foreseeability and what more discovery could be afforded the appellant to develop the foreseeability. And I can give you the discovery right now. Based on the language of the complaint that has been undisputed throughout this entire case, sometime prior to the 2012-2013 school year, a decision was made to not issue student identification cards. That was presumably done in September prior to the start of the school year. Do you know anything about this program? I mean, were students required to walk into the building with ID cards dangling from their neck or flashing the cards? I don't, Your Honor. However, I can address that question very easily if you look at the record. If you compare A24 to A21, I'm sorry, A121, A121 is an attachment by the appellant of the school district's actual visitation policies and procedures in place. You have to go to the principal. You have to sign in. You have to do all this stuff. The fact that this was actually used, the term was used, bypassed security. That's how these people got in. They bypassed security measures that were in place. So when we're discussing the lack of student identification cards, we're not saying that there's an absolute failure of security. In fact, the appellant's not even saying that. What he's saying is that it wasn't good enough. And now we're in negligence land. We're not in constitutional land. We are in negligence land because there is some sort of failure to do enough. They allege that there was a deliberate decision not to enforce the school's policy of checking visitors or registering visitors. That's not my understanding, Judge Krause. My understanding of the complaint is that there was a decision made prior to the school year to not issue student identification cards. But that argument is made, as I understand the complaint, and their briefing in opposition to the motion to dismiss, in tandem with the idea that because those IDs weren't in place, there wasn't a mechanism left to enforce the school's policy, the school made a decision not to enforce its policy of checking visitors. Correct. Well, the school made a decision to, I would say that they made a decision to alter the way they dealt with visitors, to check visitors. Because as you can see in the record in A124, there was a mechanism in place again. It just didn't involve student identification cards. That's the only thing that was different. So would this be a different case in your view if the default, the lay of the land before this policy had been, for example, that there were parents who would serve as gatekeepers to the school or hall monitors to try to prevent known violence in the area? And as a result of the institution of a policy like this, those protections were removed. Parents, for example, felt sufficiently comfortable or reliant on the school's new policy that the hall monitors, the other gatekeepers were no longer in place. Would that be a different case? I don't think so because, again, you're arguing over the sufficiency of the mechanisms that were already in place. It's not like there was a total lack of supervision or security. And, again, when you start discussing what other ideas are out there, there's no such thing as a perfect security plan. So when you start discussing what other mechanisms are out there, again, you get into negligence concepts. You get into duty should you have done more. And that's not what the Constitution is here to protect. The Constitution is here for a very specific set to, again, as the Third Circuit has cautioned, we have to avoid becoming a font of tort law. So when you and I discuss what more could have been done, what differently could have been done, I think we are discussing negligence concepts. We're discussing torts. Well, and that has to do with when there are so many mechanisms for securing a premises, then it gets back to what you noted at the outset about the fairly direct. Which one of these was the one that, aha, caused this violence to occur? And we can conduct this discovery on fairly direct right now, Your Honors. The decision was made prior to September. The kids went into school without, specifically, the appellant went into school without a student identification card. September happened. October happened. November happened. December happened. January happened. February happened. March happened. April happened. And then May happened. He was never assaulted at any time as a result of not having a student identification card. So if you take the argument that it was foreseeable that he could have been assaulted at some time because we didn't have a student identification card policy, you also have to take the flip side of that and say, well, why wasn't he assaulted sooner? This wasn't a ticking time bomb. You see what I'm saying in terms of fairly direct? We have taken account of the length of the passage of time, but you seem to be arguing that to be foreseeable there has to be actual knowledge of that harm. I do agree with that. But that's not really what our cases say. They talk about an awareness of the risk of harm. And here, at least in the opposition to the motion to dismiss, having argued that this was a high-crime neighborhood, and the existence of the policy itself that seems directed toward trying to prevent harm coming to students from outside visitors, why haven't they pleaded or at least shown enough to move forward with discovery as to an awareness of the risk of harm? I would say that the Phillips case actually states that it requires actual knowledge of the specific risk that the plaintiff complains of. It's at page 238, third circuit decision. And the Henry case follows that line. It does require actual knowledge of the specific harm. Of the risk. You keep going back to the harm. Of the risk. Our case law talks about the risk. And they have, at least in opposition to the motion to dismiss and in response to Judge Fuentes now indicated that they want to engage in discovery about the violence that was known to the school and that this policy was designed to prevent. Why isn't that sufficient to survive a motion to dismiss? Because, again, getting back to the specific harm that we allegedly created in terms of foreseeability and fairly direct is that the knowledge of random harm from random trespassers would, if you say that there's always a risk that somebody could enter the school and cause harm, you can just open up a newspaper and, of course, that's true. Well, why don't you add to that the risk of harm that was the impetus for the incident in this case, which is National Fight Day. I mean, if you take that into account, also, wouldn't that heighten the senses and put the school on? I don't believe anybody is going to argue that we had knowledge of National Fight Day at all. Well, maybe the school should have knowledge of risk of harm on such an occasion. And when we talk about should have versus, again, we're talking about things that we could have done better, that we should have done better, there's always something that could have, short of locking down the school and providing armed guards, and, again, I'm speaking crudely, but there's always something that can be done better. But to merge that into a constitutional violation is what the Third Circuit and the Supreme Court has been guarding against for decades now because of these slash Monel, kind of hybrid Monel state-created danger claims. Do you agree that this was an affirmative act, the elimination of the policy? Absolutely not. It was an affirmative act. I mean, it was a conscious decision that was made, or at least that's the allegation, as compared to in other cases, more where the policy just, you know, the temporary situation expired, if you will. Sure. Why wouldn't this be an affirmative act? I think because I, if you'll allow me to check my notes, Your Honor, real quick. I mean, it's more than being passive. It's an actual conscious doing away with something. I would say, actually, in terms of it's more than being passive, I actually, thank you for refreshing my recollection as to how I would respond to that, but I would say that it's not merely being passive. It's a decision that was made as a whole to protect or not protect, to govern, essentially, the school. And if you're going to focus on. . . So why isn't it affirmative? I don't believe it's an affirmative. I believe that the governing of the school overall is an affirmative act, but if you start getting into each and every decision that was made and you label that a policy-making decision, you're expanding the protection of the funds of the Constitution. So, again, what if you had the case where the school was serving, even in a physical capacity, as the gatekeeper? There was someone at the door checking for identification and confirming everyone who entered was a student. And that did happen that day. There's not going to be any dispute as to that. It was just bypassed. And these trespassers come to the door, are asked for that identification. Or a side door. Again, I'm sorry. Let me finish my hypothetical, please. They come to the door, they're asked for identification by the school representative, and they're unable to provide it. They don't have what's required to verify their identity to come in. Nonetheless, the school representative lets them come in the door, and they then go and attack a student. Is that an affirmative act? Is the act of seeing somebody's ID come in an affirmative act? I would argue that that would actually be a little closer to the lower court decision of the LR, which I don't believe is appropriate here. I would say that would be a little closer to an affirmative act than what we have here, but that's not what's been pledged. That's not what can be pledged. What can be pledged is that you can't put the toothpaste back in the tube of the appellant conceding that they bypassed security measures, that they just didn't even go to the front office. They ignored it, and they trampled throughout the school until the police came to arrest them. And so that's why I would say that your scenario would be, I would have a much tougher, I don't believe it would be an impossible argument, but it would be a much more difficult argument than what was pledged here and what can be pledged here in terms of this was a random attack. And, again, I don't want to compare it to the shootings of the school, but it was on a much lower level. That was essentially what happened there on that day. In terms of the specificity of the type of risk that you were suggesting the school district would need to know, beyond physical harm coming to the students, is it really your position that a school district, the first prong for seeability or even the second deliberate indifference, isn't satisfied unless the school district is specifically aware of this trespasser's coming, for example, to deal drugs, or this trespasser is coming to engage in a sexual assault, et cetera. Are you suggesting it has to be at that level of specificity of the risk of physical harm coming to students? I'm suggesting that based on my reading of Henry and, sorry, I blanked on the other case that I cited to you, but on my reading of the Third Circuit that says that they have to be aware of the actual risk that befell the plaintiff, I would say that that lends more credence that you can't have a random attack and then say you didn't do enough in terms of security measures, or you did something that was so far attenuated, such as a decision that was made back in September to harm him in May, that, yes, I would agree that there's... What if Mr. Islam can go back and establish through discovery that there were, let's say, no random intrusions in the school while the I.D. policy was in effect, and since it was discontinued there have been 10, 15 random intrusions in the school. Doesn't that then put the school in a position of foreseeability, that is, foreseeing that there is a harm as a result of discontinuing the student I.D. policy? I would say that from a foreseeability standpoint, it's possible that he would survive a 12B6 motion as to foreseeability. However, as to the affirmative use of the authority of the student I.D. cards... Apparently the student I.D. card policy was working and was discontinued, acts of violence occurred. Hypothetically. Hypothetically. I would... I don't think that the... Again, the student I.D. cards where you're proving that all of these instances occurred and occurred and occurred, I don't know if I... I'm sorry, my time is up, so I'll use my last sentence. You can finish my sentence if you'd like. Go ahead, please. I do believe that affording discovery where there's repeated instances of violence where you're saying that you're essentially just blaming the school district for, quote, being in a violent neighborhood. And, again, I don't believe that that's a constitutional violation. That's a... We're, again, talking negligence concepts, in my opinion.  Thank you, judges. Mr. Rislin? To respond to a few things, I would like to say, number one, that the Bryant v. Westmoreland County, the third circuit clearly articulated an affirmative act of misuse of authority. So it's not so much just a misuse of authority. So it's not so much of whether or not there's a... I'm being very clear. I'm saying it's not so much of an inaction or an action or a mission. It's a misuse of authority. Authority was enacted. Someone used their authority and made a decision. And, in fact, Judge Fuentes, in your dissent in Murrow, he clearly articulated that one of the issues is that if you make a decision, it can be a lot of alternative decisions. Those decisions can be how to act or how not to act. In fact, in Knight v. Tedder itself, the case that... the leading case in establishing a football test, although the police did stop the individual and ask them to send one person home, arguably it could be argued that telling Ms. Tedder, Ms. Knight, that she could go home by herself could be an inaction of not taking her home. So the whole concept of action versus inaction is not clear. And, again, because, again, Judge Fuentes, your dissent was very much supportive on the issue of it's a multitude of things. Sometimes it can be clearly an action. Sometimes it can be an inaction. And Judge Crouch was asking earlier about the security guard, and that's exactly what our opinion is in that it was an action and an inaction. The last thing I would like to say is... It wasn't the idea, Anib, that the officer displaced the caretaker who was there for his wife. Agreed. And in doing that and then abandoning her created a danger. What is the analog here to displacing or changing in some way what the default was in terms of the risk to the student? As what Judge Fuentes says, and I will agree, and if you see that I'm not harping on my argument as far as, because I don't think it's completely announced the situation, but as Judge Fuentes has asked or has talked about, one of the issues is if we were able to show in discovery or in evidence, we could argue that we may not win this case. We may go to a summary judgment and lose, but the issue of foreseeability can be established only through question discovery, only through interrogatories, only through information of knowing how successful it was in the past, how extensive, what was the decision-making, who made the decision, how did they make the decision, what would they rely upon. Those type of things are not privy to the complaint, which is going to lead me to my last point, which is that we're only required to raise in Phillips, which opposing counsel agrees with. This court remanded that case so the plaintiff can procure her complaint. And in that case, the court clearly articulated, court's indulgence, that all we are required to do is show enough factual matter to suggest the required element and also that we have enough facts taken as true that a reasonable expectation that discovery will reveal evidence of the necessary element. So what we have alleged is that they had a policy of issuing an identification card, they changed that policy. After that policy, and he argues that it's not attendant enough to the decision, it was the same academic calendar, same school year. The only thing that you suggest in response to DeJuante is a question that you would add, is that there was a history, arguably known to the school, of violence from trespassers coming into the school before. On the complaint status, correct. We could argue that we could add instances of trespassers or known trespassers and violent crimes in the area. We can also add instances as far as regarding the actual, he mentioned bypass. I think that's, again, a linguistic argument because the issue is that they walked through security because they didn't know who they were because no students had identification cards. Did you seek to amend your complaint? I did not because there was a second amendment complaint. However, it was never through leaving a court or no address or tag. We had a motion to dismiss and then a party stipulated to amend. I did not seek to cure or motion reconsideration because after it was dismissed, the order was already established. If that's all you would be adding for amendment, then, again, how do you get around Morse where the school had a policy that the doors were supposed to be closed, presumably recognizing risk of harm that could come from doors being open to an elementary school. They nonetheless stood by and tolerated the door literally being propped open. There, it was known to the school. The facts as recited indicate that the school was aware that there had been prior acts of theft, vandalism, and even assault as a result of the door being propped open. Nonetheless, we said not foreseeable and not an affirmative act. How do you get around that? If I read Morse correctly, I found that the issue was that this deranged, mentally disabled lady who came in and shot the teacher was only evidence about her, this individual person or this type of incident, was that she was lurking around the building or hovering around the building. There was no incident of violence or anything of that nature. And as a result, it appeared to me in reading Morse that they found that it was not foreseeable. I think in a different hypothetical, had it been a contractor or someone who was using that, they knew was using that door, then it would have been a different issue. But this lady came in using the door unbeknownst to them. So I think that the issue of Morse is a little different only because in this case, the students are going in and out of the building. They know these students are in and out of the building. They know who they're going to come in. You have a high crime area, and more importantly, you have a lack of identification card that you decided not to do, which you agreed that they made the decision to change the policy. And now students are not detected as far as trespassers versus students. I believe the time is up, but thank you. Thank you. Mr. Kennedy, Mr. Islin, thank you very much. Very helpful arguments. We'll take the case under advisement.